UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| SCOTT L. NEWBERN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 2:13-CV-31-RWS-NAB |

## REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Scott L. Newbern's ("Newbern") application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Newbern alleged disability due to torn ligaments in the right knee, no bicep muscle in the right arm, steel plate in the neck, diabetes, and Hepatitis C. (Tr. 179.) This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) for a report and recommendation. [Doc. 4.]

**I.   Background**

On August 12, 2010, Newbern applied for disability insurance benefits. (Tr. 131-136.) The Social Security Administration ("SSA") denied Newbern's claim and he filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 65-69, 72-74.) The SSA granted Newbern's request for review. (Tr. 76-77.) An administrative hearing was held on February 1, 2012. (Tr. 27-54.) The ALJ issued a written opinion upholding the denial of benefits. (Tr. 9-22.) Newbern requested review of the ALJ's decision from the Appeals Council. (Tr. 5.) On January 28, 2013, the Appeals Council denied Newbern's request for

review. (Tr. 1-3.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 107 (2000). Newbern filed this appeal on March 26, 2013. [Doc. 1.] The Commissioner filed an Answer and the certified Administrative Transcript on May 24, 2013. [Docs. 9, 10.] Newbern filed a Brief in Support of Complaint on October 31, 2013. [Doc. 23.] The Commissioner filed a Brief in Support of the Answer on January 27, 2014. [Doc. 28.]

## II.     Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir.

2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). Therefore, even if this Court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Gwathney v. Chater,* 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### III. ALJ's Decision

First, the ALJ determined that Newbern last met the insured status requirements of the Social Security Act on March 31, 2011 and that he had not engaged in any substantial gainful activity from his amended alleged onset date of March 27, 2009 through his date last insured. (Tr. 11.) Second the ALJ found that Newbern had the severe impairments of disc protrusion at L5-S1; multi-level degenerative changes of the cervical spine; status post anterior cervical discectomy and fusion[1] ("ACDF") at C5-C6 and C6-C7; disc herniation at C7-T severe cervical stenosis at C4-C5; moderate cervical stenosis at C5-C6; anterior cruciate ligament[2] ("ACL") repair of the right knee; diabetes; hepatitis C; and obesity. (Tr. 11.) Third, the ALJ determined that Newbern did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13.) The ALJ found that Newbern had the residual functional capacity to perform sedentary work, however, he is limited to occasionally stooping, kneeling, crouching, crawling, balancing, and climbing ramps, stairs, ladders, ropes or scaffolds. (Tr. 15.) Fourth, the ALJ found that Newbern could not return to his past relevant work; but jobs existed in significant numbers in the national economy that he could perform. (Tr. 21.) Finally, the ALJ concluded that Newbern was not under a disability from March 27, 2009 through March 31, 2011. (Tr. 21.)

---

[1] Anterior decompression and fusion is the removal of pressure and fixation of the bones between two or more vertebrae. Stedman's Medical Dictionary 90, 462, 720-21 (27th ed. 2000).
[2] Anterior cruciate ligament is "the ligament that extends from the anterior intercondylar area of the tibia to the posterior part of the medial surface of the lateral condyle of the femur." Stedman's Medical Dictionary 997 (27th ed. 2000).

## IV. Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A. Administrative Hearing

At the administrative hearing, the ALJ heard testimony from Newbern and he was represented by counsel.

Newbern testified that at the time of the hearing he was 44 years old and the primary care giver to his children, ages 4 and 15. (Tr. 33-34.) Newbern drives daily to his kids' school, the grocery store, and the doctor's office. (Tr. 35.) Newbern currently works part-time at McDonald's where he takes out the trash, cleans the tables, and filters the grease. (Tr. 38.) He works there for 12 to 14 hours per week and he is allowed to take breaks, as needed, if he is hurting. (Tr. 39.) Newbern states that it hurts when he stands too long or has to lift even light things. (Tr. 40.) He cannot lift with his knees so lifting places extra pressure on his neck and back. (Tr. 40.) Newbern testified that he is exhausted and hurting at the end of his shift and is unable to obtain a good rest at night. (Tr. 41.) On work days, the symptoms are worse than the days when he is not working. (Tr. 41.)

Newbern testified that neck surgery in March 2009 provided only temporary relief. (Tr. 41.) Newbern states that his hands and fingers are numb, he has pain in his neck and feels like someone is standing on his back and pulling his arms backwards. (Tr. 41-42.) Newbern stated that he cannot grip and cannot carry anything unless he can hold it by the bottom. (Tr. 42.) Newbern has no tricep muscles; therefore, he cannot lift any kind of weight over his head, push up over his head or push anything away from him. (Tr. 42.) He cannot hold his arms out in front of him for an extended length of time. (Tr. 42.) If Newbern looks down, it causes pain in his neck and he has limited range of motion in his neck. (Tr. 44-45.) An orthopedic surgeon has

stated that surgery would increase the range of motion in his neck, but it would not provide pain relief or renewed use of his hands or arms. (Tr. 45.) A neurosurgeon told him that there was nothing that could be done to help with the nerve damage or pain, because it was permanent. (Tr. 45.)

Newbern stated that if he sits for too long, he has pain between his shoulders. (Tr. 43.) He also has pain if he stands too long or bends over. (Tr. 43.) Newbern takes pain medication and alternates using heat and ice. (Tr. 43.) Newbern testified that he has to lay down between three to four hours on most days. (Tr. 44.) Laying down too long also causes pain. (Tr. 44.) His pain medication causes him to be disoriented and incoherent. (Tr. 44.) Newborn also has lower back pain. (Tr. 45.) He had knee surgery, but it did not provide pain relief and decreased his range of motion. (Tr. 46.) Newbern stated that he cannot squat and stand back up. (Tr. 46.) He experiences severe pain in his leg when driving.

Newbern testified that his diabetes is not regulated and he becomes dizzy, sick, fatigued, and disoriented. (Tr. 47.) He is also receiving interferon treatment for Hepatitis B. (Tr. 47.) One of the injections that Newbern takes for his Hepatitis B makes him sick, by causing vomiting and psychiatric issues. (Tr. 47-48.) The symptoms from the injections last between 1 to 3 days. (Tr. 48.) Newbern stated that he also takes medicine for anxiety. (Tr. 48.) He stated that his son helps him with his daughter, household chores, laundry, and grocery shopping. (Tr. 49, 51.)

### B. Medical Records

#### 1. Associated Medical Arts

Between December 2009 and December 2011, Newbern received treatment from Associated Medical Arts facility for diabetes care, knee pain, hypertension, rib and chest pain

from a 4-wheeler accident, a bump on his finger, knot in his groin, right foot pain, depression, sleeping problems, diarrhea, and sinus trouble. (Tr. 227-233, 483-489.) On December 22, 2009, an x-ray of his sternum was normal and an x-ray of his cervical spine showed no fracture, prior anterior cervical fusion from the C5-C7 level, and normal disc space narrowing at C4-C5 level. (Tr. 222-223, 235-236.)

### 2. Dr. I. Jeffrey Cramp

Dr. Irvin Jeffrey Cramp treated Newbern between July 2010 and December 2011. Dr. Cramp, Newbern's primary care physician, treated Newbern for diabetes, hypertension, chronic hepatitis, and knee, back, and leg pain. (Tr. 346-408, 490.) During this time period, Dr. Cramp noted that Newbern's back, gait and stance, and deep tendon reflexes were normal. (Tr. 347, 350, 354, 357, 360, 366, 369, 372, 375, 378, 381, 384, 387, 390, 396, 399, 402, 404, 407.) On December 9, 2010, an x-ray of the lumbar spine showed no acute osseous abnormality and mild degenerative changes. (Tr. 409.) An x-ray of the cervical spine on the same date showed no osseous abnormality, reversal of the normal cervical lordosis, changes of anterior cervical fusion at C5 through C7, degenerative changes in the mid and lower cervical spine, neural foramen appearing symmetric bilaterally and somewhat narrowed throughout on both sides. (Tr. 410.) An MRI of the cervical spine on December 17, 2010, showed post-operative changes spanning C5-C6-C7 with multilevel degenerative changes resulting in canal and foraminal stenosis, most severe at C5-6, and a small right paracentral disc herniation at C7-T1 contributing to lateral recess and proximal foraminal stenosis. (Tr. 411.) An MRI of the lumbar spine on the same date showed disc protrusion at L5-S1 in close approximation to, if not abutting, the left S1 nerve root and contributing to mild left foraminal stenosis, but remaining degenerative changes result in no significant canal or foraminal stenosis. (Tr. 413.)

On February 10, 2011, Dr. Cramp authored a letter stating that he has provided primary medical care to Newbern for approximately ten years. (Tr. 352.) He noted that Newborn suffered from diabetes mellitus type II requiring insulin, hypertension, bi-polar disorder, hepatitis C virus infection, right knee ACL tear for which he had surgical reconstruction without success, chronic instability and pain resulting in herniated discs in his cervical spine with a prior surgery completed and another surgery pending. (Tr. 352.) Dr. Cramp wrote that Newbern had and continued to see the appropriate specialists and was taking medically appropriate medications, but continued to suffer from chronic daily incapacitating pain in his right knee and cervical spine. (Tr. 352.) Dr. Cramp opined that Newbern had not been capable of holding gainful employment since the end of 2008 and was not medically capable of holding gainful employment for the next twelve months and into the foreseeable future. (Tr. 352.) On January 6, 2012, Dr. Cramp noted that Newbern's condition was unchanged from February 10, 2011. He again opined that Newbern had not been capable of holding gainful employment since the end of 2008 and was not medically capable of holding gainful employment for the next twelve months and into the foreseeable future. (Tr. 352.)

      3.      **University Hospital**

Newbern received treatment for his back, knee and hepatitis at University Hospital between February 2007 and December 2011. (Tr. 237-345, 419-426, 427-482.) On February 7, 2007, Dr. Dominic Patillo examined Newbern regarding his torn ACL. (Tr. 335-337.) Dr. Patillo noted that an MRI showed that Newbern had a complete tear of the ACL and a partial tear of the posterior cruciate ligament and Newbern was interested in ACL reconstruction. (Tr. 336.) Newbern reported that his symptoms had improved, but that he had 1-2 instability episodes per week and he had a fair amount of pain with the instability. (Tr. 336.)

On March 25, 2009, Dr. Usiakimi Igbaseimokumo examined Newbern for a consultation regarding neck and right arm pain. (Tr. 313.) Newbern reported progressively severe neck pain and right upper arm pain that rates at 5 to 6 on a scale of one to ten and the pain is aggravated by activity. (Tr. 313.) Newbern also reported loss of grip and pinch on the right hand. (Tr. 314.) Dr. Igbaseimokumo noted that an MRI demonstrated Newbern had C3-4, C4-5, C5-6, and C6-7 diffuse disc bulges with cord compression in the cervical spine. (Tr. 314.) Upon examination, Dr. Igbaseimokumo found that Newbern had a good range of neck movement without deformity or tenderness. (Tr. 314.) He also noted that Newbern's left arm and hand was stronger than the right arm and hand. (Tr. 314.) He found that Newbern's right grip was about grade 4+ and the left grade -5, bilateral elbow flexion was a grade 5, and elbow extension was grade -4 bilaterally. (Tr. 314.) Dr. Igbaseimokumo noted that Newbern's coordination was satisfactory bilaterally and his gait was satisfactory. (Tr. 314.) He diagnosed Newbern with cervical spondylitic myeloradiculopathy[3] and recommended cervical decompression at 4 levels. (Tr. 315.)

On April 28, 2010, Newbern visited the emergency room after falling from a ladder. (Tr. 276-288.) Newbern complained of pain in his right hip and knee. (Tr. 276.) X-rays of his right ankle, femur, knee, and pelvis showed no acute fracture or dislocation. (Tr. 284-288.) Newbern was diagnosed with a hip strain and knee sprain. (Tr. 281-282.)

On July 19, 2010, Dr. James Stannard performed a double bundle right ACL reconstruction and medial meniscus[4] repair on Newbern. (Tr. 267-269.) On July 24, 2010, Newbern visited the emergency room complaining of knee pain and swelling. (Tr. 419.) It was noted that his symptoms were relieved with removal of his dressing and right knee hinged brace.

---

[3] Myeloradiculopathy is a disease involving the spinal cord and nerve roots. Stedman's Medical Dictionary 1172 (27th ed. 2000).
[4] Medial meniscus is the "crescent shaped intraarticular cartilage of the knee joint attached to the medial border of the upper articular surface of the tibia occupying the space surround the contacting surfaces of the femur and tibia. Stedman's Medical Dictionary 1092 (27th ed. 2000).

9

(Tr. 424.) There was no evidence of deep vein thrombosis. (Tr. 422.) At a follow-up visit, Newbern reported he was doing well without complaints. (Tr. 247,433.)

On February 7, 2011, Dr. Theodore Choma evaluated Newbern regarding neck pain and left hand numbness. (Tr. 430-432.) Newbern also reported significant episodes of ataxia[5] and bilateral arm numbness related to the position of his neck, episodes of bilateral leg weakness and significant left plantar numbness and muscle cramping with prolonged driving. (Tr. 431.) An x-ray of the cervical spine on the same date showed that the anterior cervical decompression and fusion ("ACDF") at C5-C7 was stable, with slight lucency of the bone adjacent to the screws noted without prevertebral soft tissue swelling and degenerative disc disease at C4-C5. (Tr. 456.) Dr. Choma noted that Newbern's stance was erect and that his gain was normal. (Tr. 431.) The neurological examination showed 2+ and bilaterally symmetric deep tendon reflexes at the biceps, 1+ bilaterally at the triceps and brachioradialis. (Tr. 431). Dr. Choma also noted that there was a positive Hoffman's[6] sign on the right and negative on the left along with limited cervical range of motion. (Tr. 431-432.) Dr. Choma noted that Newbern may possibly have had a failed attempted fusion two years ago at C5-C7 and appeared to have signs and symptoms of cervical spondylotic myelopathy[7]. (Tr. 432.) He recommended that Newbern obtain a myelogram[8] CT scan of the cervical spine. (Tr. 432.)

On April 13, 2011, Newbern had a cervical myelogram, which showed ACDF at C5-C6 and C6-C7 without hardware complication, but a multi-level cervical spondylosis, most notable

---

[5] Ataxia is the "inability to coordinate muscle activity during voluntary movement." Stedman's Medical Dictionary 161 (27th ed. 2000).
[6] Hoffman's sign test is a test of the "flexion of the terminal phalanx of the thumb and the phalanges of one or more fingers," also called the snapping reflex. Stedman's Medical Dictionary 1638 (27th ed. 2000).
[7] Cervical spondylotic myelopathy is the "degeneration or deficient development of a portion of the vertebrae of the spinal cord." Stedman's Medical Dictionary 1171, 1678 (27th ed. 2000).
[8] Myelogram is a "radiographic contrast study of the spinal subarachnoid space and its contents." Stedman's Medical Dictionary 1170 (27th ed. 2000).

at C4-C5 level where focal myelomalacia[9] is also likely present. (Tr. 455.) A CT of the cervical spine showed the same results. (Tr. 452.) Dr. Adam Crawford and Dr. Choma then examined Newbern. (Tr. 427-429.) Newbern reported that his symptoms had not improved and he had noticed worsening weakening in his hands as well as ataxia. Newbern also reported that his arms were weak and he had problems carrying and lifting, which made his maintenance job more difficult. (Tr. 428.) Dr. Crawford noted that Newbern had decreased sensation to light touch in the C6 nerve distribution, but otherwise his sensation was normal. (Tr. 428.) Newbern's strength was 4+/5, intrinsics 5/5, and wrist extension, elbow flexion and triceps were 4-/5. (Tr. 428.) Newbern was not hyperreflexic, but he did have a positive Hoffman's sign. (Tr. 428.) Dr. Crawford determined Newbern had a well-healed ACDF C5-C7, but he had severe cervical stenosis at C4-5 and moderate cervical stenosis at C5-6 with myelopathy. Tr. 428.) Dr. Crawford recommended removal of the plate from the earlier decompression and performing an ACDF decompression at the C4-5 level. (Tr. 428.)

On June 20, 2011, Newbern visited Dr. Henry Dennis Mollman for consultation for his cervical radiculopathy. (Tr. 434-436.) Newbern complained of progressive weakness in his triceps and numbness and pain in his thumb and index finger. (Tr. 434.) Newbern reported that the pain had recently become worse and was worse at nighttime. (Tr. 435.) An x-ray of the cervical spine showed ACDF changes extending from the C5-C7 levels with small posteriorly projecting spurring changes noted from the C4-T1 levels. (Tr. 449.) There was also mild reversal of normal lordotic curvature[10] centered at the C4 level. (Tr. 449.) No significant listhesis was seen with flexion or extension and calcific densities were seen in the supraspinous soft tissues at C6-C7. (Tr. 449.) No acute fracture was visualized. (Tr. 449.) Upon physical

---

[9] Myelomalacia is a "softening of the spinal cord." Stedman's Medical Dictionary 1171 (27th ed. 2000).
[10] Cervical lordosis is the "normal anteriorly convex curvature of the cervical segment of the vertebral column." Stedman's Medical Dictionary 1032 (27th ed. 2000).

examination, Dr. Mollman noted that Newbern had a negative Hoffman's sign and diminished sensory to pinprick in the thumb and forefinger bilateral upper extremities. (Tr. 435.) Dr. Mollman also noted significant atrophy[11] in the triceps muscles bilaterally in the right greater than the left. (Tr. 435.) Dr. Mollman did not recommend acute neurosurgical intervention at that time. (Tr. 436.) He opined that the weakness seemed to be chronic in nature due to atrophy of the triceps muscles and there was no acute neural foraminal stenosis that could be identified. (Tr. 436.) Dr. Mollman recommended obtaining an EMG of the upper extremities to evaluate the chronicity of the disease. (Tr. 436.) On June 23, 2011, an EMG showed mild bilateral carpal tunnel syndrome with changes more significant on the left hand. (Tr. 444.) The EMG also showed bilateral radiculopathy due to active denervation and chronic partial reinnervation of the C7-C8 innervated muscles with the changes most marked in the bilateral triceps muscles. (Tr. 444.)

## V. Discussion

Newbern presents two errors for review. Newbern contends that the ALJ failed to use the testimony of a vocational expert in determining whether he was disabled and failed to give proper weight the Dr. Cramp's opinion. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole.

### A. Opinion of Treating Physician

Newbern contends that the ALJ should have given controlling weight to Dr. Cramp's opinion, because he provided treatment over a long period of time and was in a good position to assess that he suffers from chronic pain. Newbern also contends the ALJ had no adequate basis for discounting Dr. Cramp's opinion.

---

[11] Atrophy is "the wasting of tissues, organs, or the entire body, as from death and reabsorption of cells, diminished cellular proliferation, decreased cellular volume, pressure, ischemia, malnutrition, lessened function, or hormonal changes." Stedman's Medical Dictionary 165 (27th ed. 2000).

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p; *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if [the conclusions] are inconsistent with the record as a whole." *Id.*

In this case, the ALJ gave "little" weight to Dr. Cramp's opinion, because (1) it focused on Newbern's disability status rather than delineating functional limitations attributable to his impairment and (2) his opinion was contradicted by the comprehensive record, his treatment notes, and Newbern's activities of daily living. (Tr. 20.) The ultimate determination of disability is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d). "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." *Perkins v. Astrue*, 648 F.3d 892, 898 (8th Cir. 2011). Therefore, the ALJ was not required to give controlling weight to Dr. Cramp's opinions that Newbern was capable of

13

holding gainful employment since the end of 2008 and was not medically capable of holding gainful employment for the next twelve months and into the foreseeable future. *Id.*

Next, the ALJ noted that Dr. Cramp's opinion that Newbern had not been nor was currently capable of holding gainful employment was contradicted by Newbern's part-time job at McDonald's. (Tr. 20.) The ALJ also noted that Dr. Cramp's opinion of complete disability and chronic pain were not supported by his treatment records. (Tr. 20.) An ALJ can accord more or less weight to a medical opinion based on its consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(4). The ALJ gave good reasons for partially discounting Dr. Cramp's opinion and the reasons are supported by substantial evidence in the record as a whole.

      **B.**      **Use of Medical-Vocational Guidelines**

Next, Newbern states that the ALJ should have used the testimony of a vocational expert rather than use the Medical-Vocational Guidelines, because he has the non-exertional limitation of pain, which requires vocational expert testimony. "When a claimant suffers from a [non-exertional] impairment on his ability to perform the full range of work contemplated by the [Medical-Vocational Guidelines], the ALJ must not rely on the Guidelines to satisfy the Secretary's burden of proof, but must instead produce vocational testimony." *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995.) Pain is a valid non-exertional limitation, "however, if the ALJ finds that the claimant's [non-exertional] impairment does not diminish or significantly limit the claimant's RFC to perform the full range of Guideline-listed activities, the ALJ may apply the Guidelines in spite of a [non-exertional] impairment." *Id.* (internal citations omitted). "In particular when a claimant's subjective complaints of pain are explicitly discredited for legally sufficient reasons articulated by the ALJ, the Secretary's burden at the fifth step may be

14

met by use of the Medical-Vocational Guidelines." *Baker v. Barnhart*, 457 F.3d 882, 894-985 (8th Cir. 2006).

In this case, the ALJ found that Newbern had the RFC to perform the full range of sedentary work, with the limitations of occasionally stooping, kneeling, crouching, crawling, balancing, and climbing ramps, stairs, ladders, ropes or scaffolds. (Tr. 21.) The ALJ determined that these additional limitations had little to no effect on the occupational base of unskilled sedentary work; therefore, a finding of not disabled was appropriate. (Tr. 21.) The ALJ partially discredited Newbern's subjective complaints regarding functionality and pain, because Newbern's daily activities such as working at McDonald's and climbing ladders after his alleged onset date are inconsistent with disabling impairments. (Tr. 16.) Newbern contends that his pain was a non-exertional impairment that the ALJ did not consider; therefore reliance on the Guidelines requires reversal. Based on the record as a whole, the undersigned finds that the ALJ's use of the Medical-Vocational Guidelines was appropriate in this case. The ALJ gave legally sufficient reasons for discrediting Newbern's subjective complaints of pain and the ALJ determined that Newbern's postural limitations would not erode the occupational base for the full range of unskilled sedentary work as those activities are not usually required in sedentary work.

### VI. Conclusion

For reasons set forth above, the undersigned recommends that the ALJ's decision be affirmed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief which Newbern seeks in his Complaint and Brief in Support of Complaint be **DENIED**. [Docs. 1, 23.]

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 13th day of February, 2014.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE